Good morning, everybody. Judge Nelson, can you hear me? Good morning. Yes, I can. Thank you very much. May it please the Court, my name is Barry Sullivan. I represent Marin General Hospital in this action. Our briefs pretty much sum up everything that we really had to say. I just want to reiterate the point, though, that the relationship between a hospital and a health plan is not one that's governed by ERISA, not fundamentally. We have many legal interrelationships with people in our lives, and various threads of liability may extend to one another. Some are in tort, some are in contract, some are in state law, some are in federal law. Marin General Hospital chose to pursue its state law contract causes of action, or state law common law causes of action against our opponent, Modesto. We chose to keep within our quiver, as I mentioned in our brief, our cause of action based in federal law, the ERISA-based cause of action that would have been derivative of what the patient had when they assigned their benefits to us. Just give me the narrative of your story as your client understands it. I mean, what happened? The patient came to us for elective surgery. It's not an emergency case, so we have the opportunity to either accept the patient or decline the patient. That means at the outset there's an admissions process. The patient comes in, gives us insurance information, and we call up and say basically, will you pay for it? And you're calling whom? In this case we called the health plan or their agent. And to make a long story short, the basic process from our standpoint, which is yet to be tested because the case was dismissed, is we say that form to contract. We ask, will you pay for it? They said, yes, we'll pay. We say, will you pay X for it, X dollars? They said, we'll pay it. That's a contract promise from our standpoint. You just said, will you pay X dollars, and you said to pay it. Did they say, we'll pay X dollars or X percentage? And this is all oral? Yes. And then they don't pay it when they're finished. They don't pay it when they're finished. And the reason they give for not paying it is they said that according to their plan benefits, they only have to pay what they consider to be reasonable and customary, which was not the percentage that we induced in that initial conversation. Mr. Sullivan, you're arguing you have two sources of payment here, because you're going to bill the patient, too, right? And you get an assignment from the patient so that you can go after the patient's health care plan. That enables us to act in their name for purposes of trying to follow up on payment. Otherwise, we would not be able to communicate with the health plan. Well, without that assignment, you wouldn't be talking to the administrator at all, would you? If this were simply a patient who had no health coverage care whatsoever, you would have to work out some kind of a private arrangement with the patient to pay the full amount. That's absolutely right, and that would be an independent contract based. So you basically are, I think, proceeding on the assumption that there are two sources of funds to pay for the care. The first source would be the health care plan that covers the patient, and it was important to you to verify that the patient was in fact a covered beneficiary of the plan, right? Oh, absolutely. And now you're also asserting in this theory for your cause of action that a second contract was entered into separately between the hospital and the administrator, in which you allege the administrator promised to pay, what, 100% of the charges? I believe in this instance, Your Honor, we alleged that they said they'd pay 90% of our total. And you have evidence of a conversation between a hospital billing person and the plan administrator, and the hospital billing person will testify that the administrator told me we'd be paid at 90%? Yes, Your Honor, because that's written down in our hospital notation system as the conversation took place. Is that 90% of whatever the hospital chooses to charge for this elective surgery? Isn't there a component in all hospital billing that the services must be medically necessary? Yes, Your Honor, that is a component of it. They always, as any patient, would also have the ability to fight double charging, mischarging. Any normal things that weren't part of the contract would be fightable. And it's the administrator that makes that determination, correct, whether it's medically necessary or not, in deciding whether or not they're going to pay for all of the charges that you've submitted? Well, no, Your Honor, it wouldn't be. The doctor would determine whether care was medically necessary or not. So your theory of the case is whatever the hospital wants to charge, it gets paid at least 90% of whatever the bill is? Basically, but it is constrained, Your Honor, because our charge master, which is our 20,000-item list of various charges, are published with the State Office of Statewide Health Planning and Development, OSHPD. And so it's a published list, and it's there. Yes, but just because the hospital says, I'm adopting these five CPT codes and I want you to pay for those services, that doesn't mean that they were medically necessary. Somebody's got to make a determination. Well, that, too, would be fightable in a state court, Your Honor, you're right. It would be fightable in a state court as not being part of the contract because there would be an implied term. And just because the doctor says that it was medically necessary doesn't mean that the plan administrator is going to agree. You're right, Your Honor. And we have those fights all the time between health care providers and the payors. Right, and they're determined all the time in state court. Doesn't that determination have to depend upon a reading of the benefits in the health care plan that the patient is covered by in order to make the coverage determination as to what was reasonable and necessary and what the administrator will authorize payment for? Perhaps, but I would imagine also that it's also a constraint that would be put in under basic principles of contract law as well. Because if someone orders a certain item, a service, for example, and someone delivers a whole other slew of services besides the service that was actually ordered, they'd always have a defense under contract law to say that wasn't what I ordered. Let's assume that the procedure was something more exotic than back surgery. Suppose it was transsexual conversion surgery that would probably not be covered by Modesto's health care plan. Wouldn't it be important in that call for the biller at the hospital to know whether or not the plan would cover that kind of a procedure? You're absolutely right, Your Honor. And that would be typically what would happen during this ordinary phone call. We would say, this person's here for an appendectomy. That would be an emergency situation, but this person's here for a heart valve bypass. Is that covered? Is that the sort of thing you'll pay for? The problem, and I apologize for asking so many questions, but the problem I'm having with your theory is I don't understand how you can have a second contract without referring to the terms of the health care plan in order to determine what the terms of this oral contract are. Otherwise, all we're left with is a bare promise to pay 90 percent of whatever the hospital bills, and that can't be the contract that was entered into here by your own admission. No, Your Honor. There's two contracts here, the contract between the beneficiary and the health plan, and then the contract that's between the hospital and the health plan. The source of funds is always the same in both instances. It's the health plan, but the promise that we are trying to enforce is that direct promise that was made to us. And the fact that it does have to have incidental reference to the health plan is not something that a state court can't deal with in an ordinary contract action. And if we agree with you, the only consequence of our agreeing with you is that we say the case was improperly removed and we send it back to state court for trial on the contract claim that you're now asserting. Absolutely, Your Honor. And you may have a loser of a claim. Absolutely. Because all you've got is a he said, she said with no pieces of paper. You're pushing an open door there, Your Honor. You're right. I see I have about a minute. Why don't we hear from the other side, and then you'll have a chance to respond. Yeah. I'm sorry? Why don't we hear from the other side, and then you'll have a chance to respond. This is cold of mine. It makes it hard to understand. Sorry. Please, the court. Daniel Zolner on behalf of the plan. If you can keep your voice up, please. Sorry. Daniel Zolner on behalf of the plan defendant at police. This matter involves an ERISA assignment claim. The hospital accepted an assignment from the patient, submitted a claim electronically to the plan, had the plan adjudicate the claim pursuant to the plan provisions. When the hospital was not satisfied with the adjudication, it filed an ERISA appeal, asked for a full and fair review under the ERISA regulations. That full and fair review was provided. It was not to Marin General's satisfaction. They were advised that they had a right to file suit under Section 502. Marin General opted not to file suit under Section 502, but instead brought suit in state court for various state court causes of action. And as I understand their claim, it is that your client agreed to pay more than what was in the plan. And, of course, they went after the plan first, got what they could get out of the plan, and when they got out of the plan, what they viewed as something less than they were guaranteed under the contract, they then sued under the contract for the difference. That's their theory. Respectfully to Mr. Sullivan, that's not what's pleaded. What's pleaded is that the hospital called the administrator and confirmed eligibility and coverage. That's all that's pleaded. Where's the complaint? It's in the supplemental. It's in the first amendment complaint. And it's in the excerpts of proceedings. So put my nose in the complaint. Give us a page. It's at S.A.C. 44. They allege in there. No, I'm sorry. I'm not carrying on first page. What's this? Forty eight. At paragraph 18, they allege that the telephone conversation involved a verification of eligibility and coverage. And then if you look down to paragraph 20, they state, with the understanding that defendants would pay 90%, they proceeded to the treatment. Paragraph 19, on or about defendants also authorized the care provided, it issued the authorization. It sounds like an also. But there's no allegation that the administrator guaranteed payment of 90% or any amount. It's just that the hospital understood it would be 90%. And if you look at the claim documents. Let me ask you a different question then. Putting to one side any argument we might have about the precise wording of the complaint. Instead, just analyze this on a general theory. What if the complaint said very precisely that we called the defendant. The defendant promised to pay us 90%. In reliance upon that promise, oral promise, to pay 90%, we went ahead and provided the service. We thereafter sought payment under the ERISA health plan and got 60%. We are now suing for the remaining 30% based upon the oral contract for 90%. Assume that the complaint says that. Okay. Do they have a state cause of action that can withstand removal by your client to federal court? No, sir, they do not. Because? Because there's two preemptions under ERISA. There's a section 514 preemption and there's a section 502 preemption. Right. Section 514 is the relates to argument. Section 502 is the does the state law cause of action duplicate, supplement, or supplant an enforcement mechanism under ERISA. Right. And this claim violates both. The only way you can get removal in an ERISA claim is to assert, quote, complete preemption. Yes, sir. I mean, that's the case law. To say that there is no possibility of a state law claim, that the only possible claim irrespective of the facts is what may be proven, the only possible claim is one under ERISA. How do you get out from under our Blue Cross case? Because I think our Blue Cross case is conceptually the example I just gave you. Except the Blue Cross involved a PPO plan. There was a specific written contract between the plan and the doctors. It was a written contract. It had nothing to do with the plan provisions. You didn't have to look at the plan provisions to determine reasonable and customary. You didn't have to look at the plan provisions to determine the rate. You looked straight at the PPO contract. Well, that strikes me as a good reason why that claim was likely to prevail on the merits and this claim was likely to lose on the merits. But I'm not sure it changes this claim conceptually. I think it does, Your Honor, because if we look at the Peralta and the Castaneda-Guecki line of cases, what we're dealing with here is a claim that ultimately is going to be paid from plan assets. It absolutely affects the relationships of the parties. If hospitals can file an ERISA claim, go through an ERISA adjudication process and an appeal process, and if they're not happy with the result, turn around and file a suit in state court for additional recoveries. What's going to happen is the plans are going to stop accepting the assignments. The plans are going to stop verifying coverage and eligibility. The hospital's going to have to get full payment from the patient at the time the treatment is rendered. The patient's going to have to submit a claim under the plan. The plan will then determine whether it's reasonable and customary. And guess what? If the hospital overbilled the patient, the patient's stuck. So, yes, this absolutely, definitely will affect the relationships of the parties. I understand that it will, and, in fact, I'm a little surprised that the hospital is pursuing it in this way, because if I'm your client, the next time Marin calls me up, I'm going to say, remember that last time around? Go away. We're not going to verify eligibility or coverage. You take the risk. We're not even going to tell you if it's an employee, because you're going to sue us. But that doesn't mean that plans are defenseless or that the total system is going to break down. If a hospital, and here, this is hypothetical. I'm not now charging this to your client. I'm not charging this to Marin. But if a hospital has a practice of bringing frivolous contract claims when they don't get as much as they want from the plan based on the plan coverage, I don't think that hospital is going to stay in business very long. But it also significantly affects the plan assets, because under ERISA we are statutorily required to adjudicate that assignment claim. We can't not adjudicate the claim. We can't avoid the ERISA appeal. We have to go through the appellate process, the administrative process. And then after we spend the money to do that and it's resolved, instead of going to the federal court and having a judge decide whether or not our decision was correct, we're litigating in a state court. And now we've got twice the cost for the same claim. So there's a significant effect on the relationship between the plan and the employer, the plan and the employee, the employee and the employer. And the fact of the matter is. But I understand all this parade of horribles. I think I understand it actually very well. And the last thing I want to do is put either you or the hospital in a situation where life is so tangled that you have no choice but to engage in fruitless and expensive litigation. But what I'm trying to find out is why is this case in which I've hypothesized that the complaint is clear, that there's an independent contract for 90 percent, whether or not the ERISA plan will pay for it, why that is not an independent contract claim within the meaning of our Blue Cross case? Because the preemption under 502 is broader than the preemption under 514. It's an exclusive remedy. If there is a remedy available under 502, anything else that duplicates or supplants it is. No, that is simply not consistent with our holding in Blue Cross. Then the secondary argument is that that claim could have been brought in the administrative procedure, and, in fact, was. But the administrative procedure was under ERISA. Correct. This is not, by hypothesis, this is not a claim under ERISA. This is an independent contract claim, which I get all sick, which might be a loser. It indeed sounds to me like it is a loser. But it's an independent claim. And I would argue it's not an independent claim, because they called the plan to determine whether there was coverage under the plan. And coverage under the plan requires interpretation of the plan. If it's not reasonable and customary, it's not covered under the plan. Every ERISA plan is required to have a summary plan description and a written document. Every hospital knows there's a written document that defines the coverage. No hospital calling an ERISA plan without a PPO agreement could reasonably assume that there wasn't a contract that provided the benefits. Here's a civil procedure question for you. This is a contract, this is a claim that was filed in state court. And, of course, as you know, the pleading rules in federal court and state court are different. You can get a demurrer pretty fast in a civil case in California. And it's very hard to succeed in a 12B6 in federal court. Am I supposed to read this complaint originally filed in state court under Rule 8A, or am I supposed to read it under the club pleading rules of California? Because that might make a difference in terms of how generously I can screw this complaint. I would say you have to review this complaint under Rule 12B6, because they were given an opportunity to amend, and they amended. That's the wrong answer from your perspective. I understand, but it's probably the correct answer. Counsel, before you sit down, I have the same concerns Judge Fletcher does, but I'm really interested in sort of what's really going on here, because we're seeing a lot of these cases now. Are the hospitals basically trying to use these separate state court actions as a means of getting leverage over the administrators and the plans in order to squeeze more money out of them because they're dissatisfied with what they're getting in the ERISA claims dispute resolution process? I certainly would not want to try and infer the intent of the parties. I think it's an attempt to get around the reasonable and customary limitation. Most of the ones that I've been involved with have involved hospitals that are associated with teaching universities, which tend to be more expensive than local community hospitals. For whatever reason, just about every one that I've had has been a teaching hospital. But is your experience under the ERISA claims resolution process that those types of claims tend to be resolved more disfavorably to the providers? I believe that if the claim was, if the charges are more than what's reasonable and necessary, and that's determined geographically under this particular plan, you have to look at what were the providers in the same geographic area. And that's how this plan defines reasonable and customary. If the charge is greater than what's being charged by other hospitals or providers in the area, then the plan pays what other hospitals in the area are charging. And these disputes are those hospitals in which their charges are higher than the geographic region. Okay. Thank you. Thank you. Thank you. You've saved some time. Yes, Your Honor. I wanted to bring the Court's attention to paragraph 40 of our first amended complaint, which is denoted SAC051 in the excerpts. It says, On about April 8, 2004, hospital and defendants entered into an oral contract whereby hospital agreed to provide medically necessary services to the defendant's enrollee, in return for which hospital, it's a misstatement there, obviously meant defendants agreed to pay hospital's bill at 90 percent of hospital's total bill charges. That's what we got to work with here. And under that rubric, if it's correct, if we've got proof for it, then we've been aced out of a heck of a lot of money. Let me ask the same question that Judge Tolman asked, which I think is an important question. And I'll state it in the most general terms. What's going on here? Hospitals are dying for money, Your Honor. Hospitals are closing emergency rooms. Hospitals are suffering. Well, I understand that part, too. But that's only to say you'd like some money. One of the reasons why is because health plans – I see I'm running out of – That's okay. Feel free to answer. Health plans are hiding under the reasonable and customary rubric to say, well, what we determine is reasonable and customary for a similar hospital. Then the question then was, what do you define as a similar hospital? They hired database administrators. There was a $50 million fine by the Attorney General of New York about two weeks ago, maybe three weeks ago, Andrew Cuomo, against UnitedHealthcare, because they were using an outdated database to determine reasonable and customary. It was like five years old. Is one of the problems here that this is a plan that's centered in Modesto, and they're looking at what Modesto hospitals charge for what a San Rafael hospital charges? Is that part of the problem? That could be part of it. But the other thing is, is who do they hire to go and do their database administration? There's probably at least 1,000 hospitals in California. Trying to sort those out is tantamount to giving them a loaded deck and letting them deal the cards. And then you've got the problem of the treating physicians ordered the service because the doctor felt it was necessary for the patient, but on subsequent review by some faceless person. Non-doctor. Non-doctor. The plan disagrees, and here we go. You fully understand our argument, Your Honor. Okay. Okay, thank you. Thank you both for your useful arguments. If I had my way, we would not have to deal with these cases. But I don't have my way. Thank you. The case of Marin General Hospital v. Modesto at Empire Attraction is submitted for decision.
judges: Nelson, Fletcher, Tallman